UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL TIMOTHY SCOTT,<br><br>Defendant. | Case No. 4:24-cr-00061-DCN-2<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Michael Scott's Motion to Dismiss Counts One and Six of the Indictment. Dkt. 36.[1] The Government opposes the Motion. Dkt. 44.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[2] Upon review, and for the reasons set forth below, the Court DENIES Scott's Motion.

---

[1] Counts One and Six of the Indictment are the only counts that apply to Scott. The remaining counts apply to Scott's co-defendant, Jerrod Farr. Dkt. 2. Farr recently entered a plea of guilty to Count Two of the Indictment and is proceeding to sentencing. Dkts. 48–51.

[2] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

## II. BACKGROUND

Scott is a licensed Idaho outfitter and guide who co-founded White Cloud Outfitters in 1987. White Cloud Outfitters offers hunting services in the Salmon-Challis National Forest area of Idaho. In 2019, Scott sold the business to Jerrod Farr but continued guiding hunts as Farr's employee.

On October 2, 2020, and September 1, 2022, Scott guided paying clients on bighorn sheep hunts in Management Area 19 ("MA-19"), a 65,000-acre area in the Salmon-Challis National Forest, without a permit. The 1987 Challis National Forest Plan (the "Forest Plan")[3] bans commercial guiding without a proper permit in MA-19 to protect the natural character of the land and bighorn sheep habitat. Scott's failure to obtain the requisite permit serves as the basis for the two charges against him, alleging he violated the Lacey Act.[4] Dkt. 2, at 3, 5–6, 11.

In 2019, White Cloud Outfitters obtained a 10-year special-use permit for the Salmon-Challis National Forest (expiring 12/31/2029) from the United States Forest Service ("Forest Service").[5] The permit authorized trail rides and pack trips in certain areas. The permit did not authorize commercial guiding of bighorn sheep hunts. That said,

---

[3] A "forest plan" is a comprehensive document guiding resource management activities in a national forest.

[4] The Lacey Act prohibits transporting, selling, or acquiring wildlife taken in violation of federal, state, or tribal law. 16 U.S.C. § 3372(a)(1), (a)(2)(A). Guiding a hunt for payment constitutes a "sale." *Id*. § 3372(c)(1). Additionally, under the Lacey Act, 16 U.S.C. § 3372(c), a wildlife kill during a commercially guided hunt without proper federal permits renders that kill illegal. *United States v. Jablonsky*, 776 F. App'x 952, 953 (9th Cir. 2019).

[5] White Cloud Outfitters had received 10-year special use permits prior to 2019 as well. Scott argues some of those prior permits differed from the permit in place during the events in question here. Those differences may be good arguments for trial, but from a legal standpoint, the Court is only concerned with the permit in place at the time of the events in question.

amendments could be made for one-time guided bighorn sheep hunts, but those required Idaho Outfitter and Guide Licensing Board ("IOGLB") approval via Form OG-23.1, coordination with other outfitters and agencies, and adherence to all applicable Forest Service rules.

On October 1, 2020, Farr applied via Form OG-23.1 for a permit to hunt in Unit 37's non-outfitter areas from October 2-11, 2020. Farr explicitly noted that he "[would] not be guiding/hunting in management area 19." Dkt. 44-6, at 1. Before the Forest Service had processed the application for a permit amendment, however, Scott guided a customer on a hunt in MA-19 resulting in an illegal kill.

On May 25, 2022, Farr applied for another permit to hunt in Unit 37 from August 28-September 6, 2022. The application for the one-time hunt was granted and memorialized as Amendment #4 to the 2019 10-year special-use permit. Amendment #4 authorized a one-time guided bighorn sheep hunt in Unit 37 but excluded MA-19. On September 1, 2022, Scott guided a hunt beyond the boundary restrictions of Amendment #4 into MA-19, resulting in another illegal kill.

On February 27, 2024, a federal grand jury returned an indictment charging Scott with two counts of violating the Lacey Act for knowingly guiding illegal bighorn sheep hunts in MA-19 in 2020 and 2022. Dkt. 2.

On April 21, 2025, Scott filed the instant Motion to Dismiss Indictment, alleging the Forest Service has mis-interpreted the Forest Plan and how permits are issued, which violates the Administrative Procedure Act ("APA") and, as a result, the charges against him which are based on such an interpretation must be dismissed. Dkt. 36. The Government

MEMORANDUM DECISION AND ORDER - 3

opposes the Motion. Dkt. 44.

Trial is currently set to begin on August 4, 2025. Dkt. 35.

## III. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may challenge the sufficiency of an indictment by alleging a lack of specificity or failure to state an offense, among other reasons.[6] Indictments "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend;" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The Ninth Circuit has held that an indictment setting forth the elements of the offense is generally sufficient. *United States v. Fernandez*, 388 F.3d 1199, 1219 (9th Cir. 2004) ("In the Ninth Circuit, the use of a bare bones information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.") (cleaned up). An indictment need only set forth the essential facts necessary to inform the defendant of what crime he has been charged with; it need not explain all factual evidence to be proved at trial. *United States v. Blinder,* 10 F.3d 1468 (9th Cir. 1993).

---

[6] Scott does not specifically outline the basis for his motion in his briefing. He broadly cites to Rule 12, but then pivots to the APA and the applicable standards there. He seems to imply the present motion presents a question of law, but then cites to extrinsic evidence and argues facts. So too does the Government. The Court addresses this divergence more below. *See infra* note 13.

"[A]n indictment 'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)). In cases when an indictment "'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (quoting *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989)).

## IV. DISCUSSION

Scott alleges the Government's case rests solely on its belief that guided hunting is prohibited in MA-19. Because this is an incorrect interpretation by the Forest Service of the Forest Plan—after all, hunts are allowed with permits—he alleges the Government's actions violate the APA, and the indictment must be dismissed.

To begin, the Court must set the stage by discussing the APA.

Scott argues the Government is violating the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq., with its faulty interpretation of the 1987 Challis National Forest Plan. A court's review of an agency's compliance with the NFMA, in turn, is governed by the APA. *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) (quoting *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005)) ("Because NFMA and NEPA do not provide a private cause of action to enforce their provisions, agency decisions allegedly violating NFMA and NEPA are reviewed under the [APA].".

Under the APA, agency action must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The Court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "This standard is highly deferential, presuming that agency action to be valid." *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011) (quoting *Nw. Ecosystem All. v. FWS*, 475 F.3d 1136, 1140 (9th Cir. 2007)); *see also River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1067 (9th Cir. 2010). The Court must "not substitute [its] judgment for that of the agency." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (cleaned up), *abrogated on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). "The agency's action need only be a reasonable, not the best or most reasonable, decision." *River Runners*, 593 F.3d at 1067 (cleaned up).

Scott alleges the Forest Service's interpretation of the Forest Plan as strictly prohibiting hunts in MA-19 is arbitrary and capricious. Moreover, Scott argues that even if the Forest Plan precludes hunting in MA-19, that provision of the Forest Plan itself is arbitrary and capricious. Under either scenario, he claims the Government—via the Forest Service—has overstepped and the Indictment here is invalid. He avers the Court should review the Indictment and its underlying allegations under the APA.

The Court is well-familiar with the APA, having presided over dozens of *civil* suits involving the APA. But that is the first concern the Court has with Scott's present motion— whether this is the proper setting to review the Forest Plan.

A criminal proceeding such as the one against Scott is not the typical forum for adjudicating APA claims. To be sure, the Ninth Circuit has held that "in a criminal proceeding predicated on the Forest Service's administrative determination, a defendant may obtain judicial review of the agency action under the Administrative Procedure Act (APA), so long as the defendant complied with the procedural requirements for direct review and the APA's statute of limitations has not expired." *United States v. Backlund*, 689 F.3d 986, 990 (9th Cir. 2012).[7] The Court will address the statute of limitations and exhaustion momentarily, but as a fundamental matter, it is not entirely clear Scott is challenging any agency *action* as part of his present motion.

The Government has brought charges against Scott pursuant to the Lacey Act and his failure to obtain a permit. But Scott is not challenging the legality of the Lacey Act. He is challenging the interpretation and implementation of a Forest Plan that requires permitting. The two things do not squarely match. It is true that Scott's failure under the Lacey Act is based, in part, upon the fact that he was required to have permits. But the actual basis of the Government's claims is the Lacey Act and its requirements, not the Forest Plan. Thus, even if Scott were to prevail on his allegations that the Forest Plan was somehow flawed and/or that the Forest Plan shouldn't "strictly" prohibit hunting in MA-19, it would not change the fact that commercial hunting requires a permit, and Scott's lack of a permit, among other things, was a violation of the Lacey Act.

---

[7] Notably, the Ninth Circuit reiterated that while a defendant may challenge the underlying regulations that triggered criminal charges under the APA, that is typically done in "separate administrative proceedings." *Backlund*, 689 F.3d at 990. Furthermore, it reiterated that if a person seeks federal judicial review under the APA, the person must first engage in that administrative process to satisfy the exhaustion requirement.

MEMORANDUM DECISION AND ORDER - 7

*Critically*, Scott knew this. And that's what makes his argument now somewhat disingenuous. Scott applied for the required permits.[8] And he knew he was not allowed to hunt in MA-19.[9] Now, for whatever reason, Scott decided to move forward without a permit on the first hunt and to exceed the authorization granted to him by the permit on the second hunt. But regardless of *why* Scott did those things, the fact remains he *knew* he needed a permit. Afterall, why apply for the permit in the first place if he did not think it necessary? Thus, to now preset a post-hoc rationalization argument that the permitting structure was unconstitutional or that the Forest Service had spotty implementation[10] rings hollow.

The Court turns next to the statute of limitations and exhaustion.

APA challenges must be filed within six years of accrual. 28 U.S.C. § 2401(a). The Government alleges the action Scott is challenging accrued in 2020 because he had been warned as far back as 2014 that commercial guiding was prohibited in MA-19. For his part, Scott does not nail down an exact date for the statute of limitations, but suggests that, at

---

[8] Technically, Farr is the person who signed the two permits at issue. Dkts. 44-6, 44-7. Scott, however, had applied for these same permits in the past and was familiar with the process. Dkt. 36, at 5.

[9] As for the first permit, the application specifically noted there would "not be guiding/hunting in management area 19 . . . ." Dkt. 44-6, at 1. As for the second permit, the authorization specifically stated that MA-19 was off limits. Dkt. 44-9, at 1.

[10] Underlying most of Scott's arguments is the idea that the Forest Service had granted permits in the past for him to hunt this same area. Again, however, this does not help Scott. If anything, it shows he knew he needed a permit and he knew how to correctly obtain one. And the argument that the Forest Service's inconsistency somehow justified Scott's failure to follow the law bothers the Court. Such an argument is akin to arguing that because some people who speed while driving aren't ticketed (or even pulled over), they can never be ticketed (or pulled over) in the future. Scott may try to persuade a jury that he lacked any mens rea to break the law because of his history with the Forest Service. But the fact remains permits were required and he didn't have a permit. The Government was well within its prosecutorial discretion to charge the crimes it did in this case.

the earliest, any calculation should begin from the action giving rise to these criminal charges, e.g., in 2020 and 2022 when Scott submitted his OG-23.1 forms seeking a permit.

Candidly, the Court is not entirely sure when the appropriate statute of limitations should begin and end in this case. However, because the Court next finds that, regardless of when the statute of limitations was/is, Scott has failed to exhaust his administrative remedies, it need not definitely resolve the question of when the statute of limitations began and ends.

The Court notes that Scott's arguments are understandable because the permitting process he contends was erroneous and gave rise to these criminal charges occurred in 2020 and 2022 respectively. But to reiterate, Scott is actually challenging the legality of the Forest Plan—which was enacted in 1987. In addition, Scott does not dispute that he knew about the regulations and the restrictions in MA-19 long before 2020. It is also important to remember that Scott bears the burden on this Motion to Dismiss, and the Court is to view the facts and allegations in the light "most favorable to the prosecution." *United States v. Ubaldo*, 859 F.3d 690, 699 (9th Cir. 2017) (cleaned up). He has not met his burden here to illustrate the precise statute of limitations timeframe.

Turning next to exhaustion, the APA requires that plaintiffs exhaust any administrative remedies before suing in federal court. 5 U.S.C. § 704; 7 U.S.C. § 6912(e). *See also Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965 (9th Cir. 2006). Thus, even if the Court were to construe Scott's Motion to Dismiss Indictment under the APA and perform that type of review, he would be procedurally defaulted from pursuing his claims for the simple reason that he did not challenge any of the matters he challenges now

MEMORANDUM DECISION AND ORDER - 9

before the agency below.

Scott rejects this idea by claiming it is unclear whether certain actions by Forest Service employees were "final agency actions" and/or even appealable. Regardless, Scott did *nothing* to exhaust his administrative remedies either way. In other words, Scott never sought an administrative review or any type of reconsideration of any of the actions he now complains are unconstitutional. But to challenge the Forest Service's Forest Plan or interpretation/implementation of the Forest Plan in federal court, Scott was required to challenge those matters via the administrative process at the agency level.

Again, it does not matter when that timeframe was because Scott has never done anything to suggest he was seeking any type of administrative review of the Forest Service's actions he now challenges.[11] Because Scott (nor Farr) exhausted administrative remedies, Scott may not now challenge the Forest Service's permitting decisions to avoid criminal charges.[12]

## V. CONCLUSION

Scott is trying to fit a square peg in a round hole with his present Motion. He seeks the dismissal of the Government's Indictment alleging Lacey Act violations by challenging

---

[11] At the risk of repetition, this concept continues to bother the Court. To suggest now that Scott had some deep-seated disagreement with the Forest Service is simply not accurate. He knew he needed permits. He applied for permits and was awarded permits for years. He was also denied permits. So, he clearly knew how the process worked and what was required of him. It would, therefore, seem natural to assume he knew (or could have ascertained) how to appeal a decision he did not like or challenge the statute at the administrative level at some point between when he engaged in this conduct (2020 and 2022) and when he was charged in 2024. To do so now on the eve of trial is frankly too little too late.

[12] Scott does not argue at any point that exhaustion was unavailable or that he could not, otherwise, comply with this requirement. He simply claims it isn't clear which actions were final and/or appealable.

MEMORANDUM DECISION AND ORDER - 10

the Forest Plan under the APA. But that framework is not well-suited for a criminal case.[13]

Moreover, it is not clear the agency action he challenges, if overturned, would grant him any relief as he still failed to obtain a permit (or, in the case of the second hunt, exceeded the scope of the permit). The statute of limitations timeline is also not clear. And even if the Court were to set aside these uncertainties and agree it should review the Forest Plan under the APA, Scott did not exhaust *any* administrative remedies in *any* fashion. Thus, his claims are procedurally improper. If Scott wanted to use the APA for review, he needed to comply with the APA's requirements—including exhaustion.

Some of Scott's arguments on these issues might be good arguments for trial. But they are insufficient to dismiss the indictment at this stage.

The Government has alleged the requisite elements of the offense in the Indictment. And the Court declines to take this opportunity to review the Forest Service's regulations under the APA as to its permitting structure on MA-19 or, more generally, in the Salmon-Challis National Forest under the Forest Plan. Scott has not met his burden and Counts One and Six of the Indictment will not be dismissed.

---

[13] Least it goes unmentioned, in a typical APA case, the administrative record is compiled, certified, and then the parties brief the issues in summary judgment fashion. None of that has happened here. Not only is there no administrative record for the Court to review, but what little evidence has been provided—by both parties—is outside of the four corners of the Indictment. *See United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (when analyzing a motion to dismiss the indictment, the Court is "bound by the four corners of the indictment"). Both sides (and the Court), have taken some liberties with that standard. If the Court were to not consider any of the extrinsic documents, it would have to deny Scott's motion outright because the Government has met its burden in stating the elements of the crime in the Indictment. But even by wading ever so slightly into the evidence submitted by the parties to determine if any type of APA review is even necessary here, the Court finds Scott has not met his burden. In fact, as noted multiple times, the extrinsic evidence works against Scoot in that it fairly clearly illustrates he knew how to obtain permits, had obtained permits in the past, and simply decided to ignore the regulations for the two hunts in question.

MEMORANDUM DECISION AND ORDER - 11

## VI. ORDER

1. Scott's Motion to Dismiss Indictment (Dkt. 36) is DENIED.

DATED: July 11, 2025

_____
David C. Nye
Chief U.S. District Court Judge